# Groner *v.* Supreme Tent of the Knights of the Maccabees of the World, Appellant.

*Evidence—Death—Presumption of death—Seven years' absence.*

1. The rule that, in case of an absent person of whom no tidings are received, the presumption of the continuance of life ceases at the end of seven years, is applicable in an action in the common pleas by a wife to recover insurance on the life of her husband, whose death is alleged.

2. In such a case where it appears that plaintiff's husband after leaving his wife and home, did not take up a permanent residence elsewhere, but roved from place to place, the rule, as to the requirement of a showing of absence for seven years from the last known "settled or established" domicile, has no relevancy.

3. In an action to recover insurance on the life of plaintiff's husband whose death is denied by defendant, a judgment on a verdict for plaintiff will be sustained, where the evidence tends to show that the insured had lived for twelve years with his wife in a "pleasant" home which he had built; that he had two children; that his parents who were advanced in years, and many friends, lived in the same town; that in November, 1907, when his health

130 GRONER *v.* KNIGHTS OF MACCABEES, Appel.

was poor, he left home, with the intention of going to Oklahoma to work at his trade; that his wife accompanied him part of the way; that after she left him he mailed letters to her all along his route, and some from Oklahoma; that running out of funds he wrote to his wife and she sent him money; that he subsequently sent a check to his daughter from California; that in 1909 he wrote from a town in California that he was getting his teeth fixed; that thereafter no communication was received from him; that the wife made numerous inquiries for him, writing to machine shops, to public officers of towns where such shops existed, and to people, who she thought might know of his whereabouts; that her brother-in-law went on a trip to find him; that she advertised in a trade journal, offering a reward for information about his whereabouts, and that all her efforts to locate him had failed; and more than seven years after last hearing from him suit was brought.

*Appeals—Assignments of error—Exception to charge—General exception—Practice, Supreme Court.*

4. Where the record of an appeal shows that the sole exception taken to the charge was a general one, asked and granted after the jury retired, the applicant may assign for review only material matters "so inadequately presented as to be calculated to mislead the jury or "actual error of law." In such a case the appellate court will refuse to review matters not called to the attention of the trial judge unless the alleged errors are basic and fundamental.

*Appeals—New trial—Refusal of new trial—Affidavit of juror— Occurrence in jury room—Juror as witness.*

5. Where on a rule for a new trial it appears that counsel had filed a stipulation by which it was agreed that an ex parte affidavit of a juror should be given the same force and effect as if it had been taken on deposition, but plaintiff's counsel reserved the right to object to the competency of the juror as a witness, the court commits no error in excluding the affidavit, which was in effect that the affiant and certain of his associates had, in reaching the verdict, considered testimony stricken out by the trial judge.

Argued May 6, 1919. Appeal, No. 324, Jan. T., 1919, by defendant, from judgment of C. P. McKean Co., Oct. T., 1917, No. 55, on verdict for plaintiff in case of Katherine Groner v. The Supreme Tent of the Knights of the Maccabees of the World. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Assumpsit to recover life insurance.   Before HECK, P. J., specially presiding.

Verdict and judgment for plaintiff for $2,000.   Defendant appealed.

*Errors assigned* were various portions of the charge and refusal of new trial.

*F. D. Gallup,* with him *James George* and *W. E. Blaney,* for appellant.—Seven years' absence in itself does not determine the status of the absentee: Ulrich's Est., 14 Phila. 243.

Mere absence of a person from a place where his relatives reside, but which is not his own place of residence and failure of his relatives to receive letters from him for a period of seven years, does not raise a presumption of death.   The absence must be from his usual place of abode or resort: Maley v. Penna. R. R. Co., 258 Pa. 73; Francis v. Francis, 180 Pa. 644; Mut. Benefit Co. of Penna. v. Martin, 55 S. W. Rep. 694.

*T. F. Mullin,* for appellee.—Where a person leaves his home and place of residence for temporary purposes and is not seen, heard of, or known to be living for the term of seven years thereafter, he is presumed to be dead.   But in such case the presumption of life continues and the presumption of death does not arise until the expiration of seven years from the time of disappearance, unless there is evidence that the person was, at some particular date, in contact with a specific peril as a circumstance to quicken the operation of time: Schoneman's App., 174 Pa. 1.

A juror is not competent to impeach his own verdict: Ring v. Baker, 4 W. N. C. 185.

A general exception to the charge of the court is not sufficient.  The portions of the charge excepted to must be set out when the exception is taken: Sikorski v. P. & R. R. R. Co., 260 Pa. 243.

OPINION BY MR. JUSTICE MOSCHZISKER, May 21, 1919:

July 11, 1917, Katherine Groner sued to recover $2,000 insurance on the life of her husband, Jacob Groner, who she alleged died in the year 1917; the defendant beneficial association claimed there was no sufficient proof of death; judgment was entered on a verdict in plaintiff's favor, and this appeal followed.

Mrs. Groner depended upon evidence of facts justifying the presumption of her husband's death after seven years' unexplained absence. The testimony produced shows Jacob Groner and his wife lived together for some twelve years in a house which they had built in Bradford City, Pa., where two children were born to them, one, a daughter, still alive; on November 11, 1907, Groner left home with the intention of going to Bartlesville, Oklahoma, to work at his trade of machinist; his wife accompanied him to Salamanca, and he mailed letters to her "all along his route," sending several from Oklahoma; the shop where Groner was engaged failed, and he wrote home for money, saying he was out of work; thereupon $30 was remitted to him; he was next heard of from Coalinga, California, when a check arrived for $50, sent by him to Mary Groner, the daughter, through a man named Frank Thompson; in 1909, Groner wrote "a small little note stating he was in Hanford, California, getting his teeth fixed"; and, from that time on, no one received any communication whatever from him.

Plaintiff further testified that her husband, so far as she "could find out," had no permanent place of abode in the West, but "seemed to go from one place to another," wherever he could get a job in the "machine shops scattered among the camps where new [oil] wells were coming in"; that she had written everyone she knew of from Bradford, "or anyone [she] heard of, asking if they could give [her] any information as to [her] husband's whereabouts"; that she communicated with several western oil field men (naming them), in an effort to locate him; that her brother-in-law went on a trip "and tried

to find him" for her; that she wrote letters addressed to Jacob Groner, which were not received by him; that, on her request, the mayor of the city wrote the officials of several places in the oil fields "to see if they could not get the police to locate him"; and, finally, that she advertised in the "Machinist's Union Journal," presumably a trade journal of general circulation, and in one of the Bradford papers, offering a reward of $50 for information as to her husband's whereabouts.

In addition to the circumstances already recited, it may be noted that Groner had "a pleasant home" in Bradford; his parents, who were much advanced in years, and many friends, lived there; when he left, "his health was poor." In fact, the evidence fails to indicate any reason, other than death, for this man's total disappearance and utter lack of communication with his family after 1909. True, defendant produced a written deposition of a witness, one Gilbertson, who said that he had seen Groner in California, stating "it might have been in 1913 or 1914—I don't know the exact date"; and the jury were told by the trial judge that, if they believed this testimony, they should find for defendant. It is evident from the verdict, however, the jury did not credit the witness; and that, from the evidence produced by plaintiff, they concluded Groner must be dead, as alleged by her.

An examination of the Pennsylvania authorities shows the evidence in this case was ample to sustain the verdict rendered. In Burr v. Sim, 4 Wh. 149, the person whose death was at issue left his home in 1792 for South America, and was never again heard from; the report does not indicate any special search. We held the English rule, "that, in the case of an absent person of whom no tidings are received, the presumption of the continuance of life ceases at the end of seven years," to be the law of Pennsylvania. In Bradley v. Bradley, 4 Wh. 173, the trial judge charged: "It was admitted that Francis Bradley had been absent for sixteen years and upwards,"

adding "it is therefore presumed he is dead; the law presumes a man to be dead after seven years' absence, or seven years from the time he was last heard of." On appeal, we said the case was "put to the jury with peculiar accuracy," and affirmed a judgment on a verdict in accord with the charge. In Miller v. Beates, 3 S. & R. 490, "it was proved on the part of plaintiff that John Schlosser went beyond sea, unmarried, many years ago and the last that was heard of him was by a letter from him to his father, dated Bordeaux, Nov. 24, 1802......Pains had been taken to ascertain whether he died in France, but no evidence of his death could be obtained." The suit was brought in 1817 and the jury found that Schlosser was dead. In affirming, we stated that the statute of 19 Car. 2, c. 6, which enacted, in effect, that persons absent for seven years, where "no evident proof" was made of "their being alive," shall "be counted as dead," "extends to Pennsylvania"; and that, under the rule thus pronounced, "when a man's being alive is inconsistent with other facts proved in a cause, according to general experience it ought to be presumed that he is not alive." In Whiteside's Appeal, 23 Pa. 114, James Whiteside "had gone to the West or Southwest, and had not been heard of by his relatives in Pennsylvania for above fifteen years." This was shown by a witness, not a relative, who further testified that the relatives of the absent man "got a letter from him about sixteen years ago," that "he had heard his relatives frequently speak of him, and they said that letter was the last they heard of him." In affirming a finding of death, we said "the proof might have been stronger and fuller, but it was enough to make out a case prima facie." In Esterly's App., 109 Pa. 222, 231, one Gery disappeared from his home in 1870, leaving a wife and four minor children, and was not afterwards heard from. These bare facts are all that appear. In discussing the question as to his death, we stated, "the presumption of death after the lapse of seven years is as effective as direct proof of the fact," adding, "this period

of time, as respects Joseph A. Gery, elapsed on the 13th of May, 1877; after that date, according to the facts clearly established, he was in the law presumed to be dead." In Welch's App., 126 Pa. 297, 299, the report shows: "The evidence disclosed the fact that [the person in question] had been absent, and his absence unaccounted for, for a period far exceeding seven years." This was held sufficient to justify a finding of death. In Mutual Benefit Co.'s Petition, 174 Pa. 1, 2, one Schoneman left his home in New York, October 10, 1881, to take a train for Boston, and was not heard of afterwards. "Every inquiry and method of search reasonably possible was adopted by his family and friends to discover his whereabouts." We affirmed a finding that he had died at the end of seven years from the time of his disappearance. In Francis v. Francis, 180 Pa. 644, 646-7, decided in 1897, the person alleged to be dead "had left his home in Scranton, and gone with a colony to settle in Patagonia"; he was last heard from in 1876. In passing upon the question as to when he was presumed to have died, we ruled that, when a person departs from his home with a fixed intention of changing his domicile, absence from his last domicile for seven years must be shown, and the presumption of death "built" thereon; this rule was followed in Morrison's Est., 183 Pa. 155, 160, where the person in question removed from his home in this State and "settled" at Ft. Dodge, Kansas. Finally, in Maley v. P. R. R. Co., 258 Pa. 73, we held that, notwithstanding the Act of June 24, 1885, P. L. 155, relating to the granting of letters of administration upon the estates of persons presumed to be dead, the common law rules upon that point are still applicable to cases, arising in the common pleas, involving the question of the presumption of death. After deciding the point just referred to, we state, on p. 81, "The remaining question is whether the evidence is sufficient to warrant the jury in finding the fact of the death of the two sons. Jerry Maley left home in 1894, when under twenty years of age. Daniel Maley

left in 1897, when about the same age. They had lived at home with their father in the small village of Grover, containing about 150 inhabitants......During the long period of twenty years, which had elapsed since the departure of the sons, no word was received from either of them; ......a witness, who had employed Jerry [testified] that the latter indicated an intention of 'going West.'" These facts were held sufficient to justify the presumption of their death, notwithstanding a contention (p. 82) "that an effort to locate the absentees must appear"; but, in disposing of this contention, we said, "There was nothing to indicate to the father the possible destination of his sons; had such fact been known to him, reasonable search should be required to be made at the place where the boys were last known to live. As matters stood, however, the last known residence was the home of their father." Again, on p. 85, we amplified this thought by stating that, if the two boys had "left home with the intention of establishing their permanent residence at another place, absence from such place, unheard of for a period of seven years, would become necessary to raise the presumption of death."

In the case at bar, it appears that plaintiff's husband, after leaving his home in Bradford, did not at any time take up a permanent residence elsewhere; on the contrary he seems to have roved from place to place. Hence the rule referred to, in the three cases cited, as to the requirement of showing absence for seven years from the last known, "settled" or "established," domicile, has no relevancy.

Plaintiff occupied the close relation of wife, to insured; and it has been held, in other jurisdictions, "a wife who has not been advised of his whereabouts, by her absent husband......, for the period required to raise the presumption of his death, has the right to believe that he is dead, although having made no attempt to find him": 17 Corpus Juris, 1171. In short, the proof required, so far as the obligation to search for the missing one is con-

cerned, depends in a marked degree upon the peculiar facts of each particular case; here, considering the relation of plaintiff to Groner, his utter failure to advise her of his existence for more than seven years, together with all the other circumstances in the case, as previously said, the evidence was sufficient to justify the conclusion that he died at the time alleged.

As the record stands, unless some reversible trial error, in submitting the issues to the jury, is properly before us for review, the judgment for plaintiff must stand; and, in this regard, it must be remembered that the sole exception taken to the charge was a general one, asked and granted after the jury retired. Therefore, appellant may assign for review only material matters "so inadequately presented as to be calculated to mislead the jury" or "actual errors of law," it being the rule that we "will refuse to review matters not called to the attention of the trial judges unless the alleged errors are basic and fundamental": Sikorski v. P. & R. R. R. Co., 260 Pa. 243, 250, and Mackowski v. Phila. R. T. Co., 265 Pa. 34.

After detailing the circumstances of Groner's departure for the West, his absence unheard of, for seven years, the efforts to locate him, etc., the trial judge immediately charged, "If you find the fact that Katherine Groner has not heard from her husband since 1909, under the circumstances as detailed to you here, the law will raise the presumption that he is dead." Counsel for defendant asked the court, "Did you make clear to the jury that it is not absence of the man for seven years, but the unexplained absence that raises the presumption of death"; whereupon the judge stated: "I intended to so do if I have not; it is not the fact that a man goes away and has been away for seven years, but it is his unexplained absence which gives rise to the presumption which the law makes that he is dead. If he goes away under normal conditions, as testified to here by Mrs. Groner, and wrote to her afterward, then, for some unexplained reason, ceased to write to her, or to any person,

for the period of seven years, those are circumstances that would give rise to the presumption he was not alive at this time." These instructions are assigned for error.

When the parts of the charge complained of are read with their context, particularly the recital of facts depended upon by plaintiff to show the death of her husband, and when the inquiry put by counsel, which called forth the last above quoted instruction, is given due consideration, we are not convinced that any "actual error of law" appears, or that any material matter was "so inadequately presented as to be calculated to mislead the jury." If the charge is taken as a whole, it is quite plain the trial judge, when he said the absent one's failure to write for seven years, "would give rise to the presumption that he was not alive," meant merely that such failure to write, together with the other circumstances in the case, was sufficient to give rise to the presumption that Groner was dead; and this, if, and only if, the jury believed the facts and circumstances detailed to them by plaintiff and her witnesses. The charge not only reviews plaintiff's evidence, but also that depended upon by the other side; and the trial judge instructed the jury, if they believed the latter, the verdict must be for defendant, that the credibility of the witnesses was for them to consider and determine, and, finally, that the burden of proof was upon plaintiff to establish her case by a fair preponderance of evidence. No "basic" or "fundamental" errors appear; if counsel for appellant were dissatisfied with the answer made by the court to their inquiry, which was practically a request for additional instructions, they should have called the attention of the trial judge to the matter of their dissatisfaction, and, if not corrected, taken a special exception. The first two assignments of error are overruled.

The remaining assignments complain of the judgment for plaintiff and the refusal to grant defendant a new trial; they rest upon an allegation, based on an ex parte affidavit of a juror named Lindholm, that he and certain

of his associates, in reaching their verdict, considered testimony stricken out by the trial judge. Counsel for appellant concede that "what transpired in the jury room cannot be revealed by the testimony of any of the jury, as this would be against public policy" (Stull v. Stull, 197 Pa. 243, 248, 253-4; Smalley v. Morris, 157 Pa. 349, 351, 358; also see opinion of THAYER, J., in Ring v. Baker, 4 W. N. C. 185), but contend that a stipulation, entered into between them and counsel for plaintiff, requires the present affidavit to be considered. The court below has this to say upon the point at issue: "When the stipulation was filed, counsel for plaintiff expressly stated that he reserved the right to object to the competency of the juror as a witness......All that was [intended], when the stipulation was executed, was to give the ex parte affidavit the same force and effect as if it had been taken on deposition......The objection to the competency of Lindholm to testify to the facts set forth in the affidavit is sustained"; we see no error in this ruling.

The assignments are overruled and the judgment is affirmed.