## Commonwealth v. Wilson.

*New trial—Impeachment of verdict—After-discovered evidence—Intoxication of juror—Record of conviction.*

1. It is never permitted to impeach a verdict by the declarations of a juror as to what happened in the jury-room, or as to what influenced him.

2. Where a juror becomes intoxicated upon the trial, and from time to time goes to sleep, it is the duty of counsel to bring the matter to the attention of the court at once. The trial of a case is under the inspection of the court, and unless the court personally notices a juror's condition, or has it brought to its attention during a trial, allegations that the juror was intoxicated or asleep will not be considered, especially where the court has a distinct recollection that the juror was neither intoxicated nor asleep.

3. A witness may be asked, when on the stand, upon cross-examination, whether he had been convicted of a crime or not, for the purpose of affecting his credibility, or the other side may introduce the record that he has been convicted of a crime, without interrogating the witness upon the subject.

Motion for a new trial. Q. S. Northampton Co., June Sess., 1923, No. 20.

*Charles P. Maxwell*, Assistant District Attorney, for Commonwealth.

*Frank P. McCluskey* and *Smith, Paff & Laub*, for defendant.

STEWART, P. J., Oct. 8, 1923.—These are motions for a new trial and in arrest of judgment. The first and second reasons are that the verdict was against the law and the evidence. No specific error in the charge has been called to our attention, and we are entirely satisfied with the verdict. The

4 D. & C.

case was well fought, and every consideration was presented to the jury by the learned counsel for the defendant, but the jury found' that the defendant was guilty, and that should end the case unless the trial has not been conducted according to law. The third reason is as follows: "That since the verdict has been rendered in the above case, counsel for the defendant has learned that one of the jurymen, Wallace Bloom, boasted of the fact to one Walter Trumbauer that he, the said Wallace Bloom, was able to show Wilson how much of a friend he was to him, evidencing that the jury was prejudiced against the defendant." It is difficult to understand just what is meant, but assuming that the juror was prejudiced against the defendant prior to the trial, that fact is not sufficient to entitle him to a new trial. The defendant should know whom the jurors are before trial, and the law has given him a liberal number of peremptory challenges, and he is entitled to any number of challenges for cause shown. The juror was sworn to try the case according to the law and the evidence, and the verdict of twelve men is never set aside, even if it should be proven that one of them, after the trial, had made prejudicial declarations against the defendant. From Lessee of Cluggage v. Swan, 4 Binney, 150, to the late case of Groner v. Knights of Maccabees, 265 Pa. 129, it has been uniformly held that verdicts are not set aside by testimony of the jurors as to what transpired in the jury-room, or impeached by remarks of individual jurors after verdict.

The fifth and sixth reasons are based upon after-discovered witnesses, and a large number of affidavits are attached to the petition. In Com. v. Roddy, 184 Pa. 274, it was held: "The refusal of a motion for a new trial is an error in law only where it is apparent that such refusal amounts to a clear abuse of discretion." To the same effect is Com. v. Ezell, 212 Pa. 293. In Com. v. Flanagan, 7 W. & S. 415, on page 423, Mr. Justice Rogers said: "Granting new trials does not depend upon the whim or caprice of the judge, but upon well-established and fundamental principles of law. In the trial of issues of fact, the court judges of the competency,'the jury of the effect, of testimony. But after the verdict, when the motion for a new trial is considered, the court must judge, not only of 'the competency, but of the effect of evidence. If, with the newly-discovered evidence before them, the jury ought not to come to the same conclusion, then a new trial may be 'granted; otherwise, they are bound to refuse the application. And in Lessee of Ludlow's Heirs v. Parker, 4 Hamm. (Ohio Reps.) 5, it is ruled that, in considering the motion, the court will not inquire whether, taking the newly-discovered testimony in connection with that exhibited on the trial, a jury might be induced to give a different verdict, but whether the legitimate effect of such evidence would require a different verdict." The rule with reference to granting a new trial is the same in civil as in criminal cases. Where the application is based upon after-discovered testimony, the rules that control the court in considering such applications are: "1. The evidence must not be merely cumulative. 2. It must relate to the merits and not to discredit or impeach witnesses. 3. It must have been discovered since the prior trial, and be such that by reasonable diligence it could not then have been produced. 4. It must be of that character which not only might produce a different result, but the legitimate effect of 'which would require a verdict for the other party." Neither the reasons nor the affidavits in 'this case come within above rules.

The seventh reason is as follows: "That since the verdict has been rendered, the defendant has learned that one of the jurors, Martin, was intoxicated. That the physical condition of the juror was such by reason of his intoxication that at the time he was placed back in the jury-box he was unable

to give his strict attention to the testimony given, and that the juror on several occasions during the trial dozed off to sleep while testimony was being taken." This reason should be considered in connection with the thirteenth reason, which is as follows: "The court erred in refusing the motion of counsel to withdraw a juror after the juror had been brought into court on an attachment, when it was disclosed that he was brought here to the court in a closed automobile by the sheriff and two prominent witnesses for the Commonwealth, one of whom was an investigator in this case and displayed a biased interest in the conviction of the defendant, both before, at and since the trial, and the other of whom, at the time he was on the witness-stand, showed that he was hostile to the defendant and other parties whose names were connected with the case." This case was called for trial on Friday morning. Trial was continued the next day. Adjournment was had over Sunday. On Monday morning the juror referred to did not answer at the opening of court. An attachment was issued for him, and he was brought into court by the sheriff. We saw nothing to lead us to think he was intoxicated when he was brought into court, and he was directed to take his seat in the box. Immediately after he took his seat, counsel for the defendant asked that the juror be sent from the room, and that a juror be withdrawn for the matters set forth in the thirteenth reason. We immediately afforded counsel an opportunity to prove their allegations, and, as the record will show, they completely failed. The trial proceeded on Monday and Tuesday. After the verdict had been rendered, we called the juror before us and examined him, and particularly asked him whether he had not been drinking on Sunday. He denied the fact, and he was then fined, not for intoxication, but for delaying the court. It would have been highly improper to have examined the juror as to his absence when he was brought into court, and to have inflicted a fine upon him while discharging his duties. As we said before, there was no visible evidence of intoxication. If the defendant's counsel noticed anything, it should have been at once brought to the attention of the court. It cannot be presumed that the sheriff would not have informed the court if the juror had been intoxicated, and the watch which we uniformly keep on the jurors would have disclosed to us if the juror had been asleep. In a similar case, Com. v. Jongrass, 181 Pa. 172, the Supreme Court said: "The other question relates to the refusal of the court below to set aside the verdict because it was alleged that one of the jurors had for an instant appeared to be asleep. This motion was addressed to the discretion of the court. It depended upon a fact that must have transpired in the presence of the learned judge. If this assignment was regular, we could not consider it upon this record. The learned judge stated, when this motion was before him, that he had given particular attention to this juryman during the trial because of his age, and was able to say upon his own knowledge that he was awake and attentive except for a single instant, and that he lost nothing of the trial. It was idle to call witnesses to prove what the learned judge knew to be untrue. He would not have been bound by such testimony if given, for neither a judge nor a juror is bound to accept the statement of a witness that contradicts the testimony of his own senses." In Houpt v. Hendler, 2 Kulp, 400, there is a good discussion upon the failure of counsel to object to a juror who may have indulged in the use of intoxicants during the trial. The mere fact that a juror does not appear should be notice to all parties to learn the cause of his non-appearance, and if that cause incapacitated him at the time he resumed his jury duty, it should be promptly brought to the attention of the court; otherwise, a defendant cannot take the chances of a

verdict in his favor and raise the question on a motion for a new trial. See McCorkle v. Binns, 5 Binney, '340; Eakman v. Sheaffer, 48 Pa. 176; Com. v. Razmus, 210 Pa. 609, and Com. v. Beard, 48 Pa. Superior Ct. 319.

The ninth, tenth, eleventh and twelfth reasons are as 'to the introduction by the Commonwealth in rebuttal of the record of the conviction of defendant's witness for larceny and burglary. The objection is made that the witness was not asked, when upon the stand, whether he had been convicted or not, and that not having been asked, the Commonwealth could not offer the record of his conviction in rebuttal. This was not the case of a defendant, and we are not interested 'in the variety of decision that arose after Buck v. Com., 107 Pa. 486, was decided, but in Com. v. Racco, 225 Pa. 113, it was held that a witness may be asked whether he had not been convicted of a crime, but it was said that the record was the best evidence. The fact can be shown either way; by asking the witness himself, and if he admits it, that ends it; if he denies it, by putting the record in; or the Commonwealth can introduce it subsequently, as was done in this case in rebuttal. See, also, Com. v. Auerbach, 71 Pa. Superior Ct. 54. We see no reason why the testimony of Mr. Seifert should not have been 'received in rebuttal. At the most, it amounted to little, but it did have some bearing on the location of the Excelsior store.

And now, Oct. 8, 1923, motion for 'a new trial is refused, and motion in arrest of judgment is denied.

From Henry D. Maxwell, Easton, Pa,