## Woodside's Estate.

*Stewart & Stewart,* for accountant; *Thomas F. Garrahan,* for claimants. *Howard Neely,* for Commonwealth.

CHALFANT, J., Oct. 4, 1929.—At the audit of the account of the administrator the attention of the court was called to the fact that William S. Daugherty and Jennie Daugherty Hughes, two cousins of decedent, had been absent and unheard of for a period of more than seven years, and the court was asked to decree the balance for distribution to the other cousins named in the audit statement. A hearing was held and testimony taken relative to the two absentees. From the evidence it appears that William S. Daugherty, if living, would be about eighty-eight years of age, and Jennie Daugherty Hughes over eighty years. Both had resided near Wilkinsburg, Allegheny County, Pennsylvania, all their lives, or up to the time of their disappearance. In the year 1919 or 1920, an effort was made to locate both of these parties, and an advertisement was inserted in the Pittsburgh Legal Journal and probably another newspaper, seeking information as to their whereabouts, and about the same time inquiry was made at a number of institutions in Allegheny County, but no trace of them was found. The witnesses called were people known to the absentees, and those who had frequently seen them prior to their disappearance. Neither of the parties had signified their intention of changing their residence. From the evidence adduced, we find that William S. Daugherty has been absent and unheard of since Jan. 30, 1911, and Jennie Daugherty Hughes since June, 1900, and are presumed to have been dead since those respective dates, and are, therefore, not heirs of decedent and not entitled to participate in the distribution of his estate.

While section 6 of the Fiduciaries Act of 1917 provides a method of decreeing certain absentees to be presumed to be dead, and it should be followed in cases requiring the issuance of letters testamentary or of administration, or where there is no personalty and the title to real estate is involved, yet, in a case like this, where the persons have been absent for so long a time and there can be little doubt of their being no longer in existence, it would seem to be a waste of time and money to insist upon a strict compliance with the statute, and in making this decree we are not without precedent. In Esterly's Appeal, 109 Pa. 222, which was a partition case, the Supreme Court affirmed the action of the Orphans' Court in its finding that one of the heirs was presumed to be dead, which decree was based on the facts alleged in the petition and supported by affidavits. The case of Maley v. Pennsylvania R. R. Co., 258 Pa. 73, was an appeal from the Common Pleas Court, where an action had been brought to recover the amount on deposit by a decedent in the employees' fund of the railroad company. The court left to the jury the question whether two absent sons, who would have had an interest in the fund if living, were dead. Mr. Justice Frazer, in an opinion of the court, says: "The courts have frequently, since the passage of the Act of 1885, assumed jurisdiction to pass on the question of presumption of death without the formality of applying for letters of administration pursuant to that act." This case was followed in Groner v. Knights of Maccabees, 265 Pa. 129, and in his opinion Mr. Chief Justice Moschzisker says: "Finally, in Maley v. Pennsylvania R. R. Co., we held that, notwithstanding the Act of June 24, 1885, P. L. 155, relating to the granting of letters of administration upon the estates of persons presumed to be dead, the common-law rules upon that point are still applicable to cases arising in the Common Pleas involving the question of the presumption of death." The Act of 1885 was incorporated in the Fiduciaries Act.

In the case of Fanning, Admin'x, v. Equitable Life Assurance Society, 264 Pa. 333, which was an action on a life insurance policy, the presumption of death of the insured was conceded and the question was whether the evidence was sufficient in law to sustain the finding of a jury that the insured died prior to a certain date, but no question was raised as to the manner in which it was ascertained. This method of finding the presumption of death is recognized in Freeman's Estate (No. 1), 227 Pa. 154, which was an appeal from the Orphans' Court of Philadelphia County. In Rees's Estate, 246 Pa. 188, the Orphans' Court made a final decree of distribution which contained a finding of fact that a legatee had died previous to the death of the testator, intestate, unmarried and without issue, and that the legacy had therefore lapsed, and the fund was distributed among testator's heirs; and, while this was not the subject of the appeal, nevertheless, the practice was not criticised. In Sherwood's Estate, 206 Pa. 465, the appeal was from the refusal of the Orphans' Court to grant a review of the decree of distribution to the administrator of the estate of an absentee, when there had been a decree of the presumption of death under the Act of June 24, 1885, the petition alleging that the absentee had been dead for so long a time that he was incapable of inheriting any part of his mother's estate. The lower court, in dismissing the petition, said: "At this time there must be shown some ground for granting a bill of review in this estate other than a supposed hardship which may affect the petitioners growing out of the necessity of preserving the estate of Henry F. Sherwood, or his heirs, should they or some of them appear; for, although he is presumed dead, that presumption may be overcome or the right of the petitioner to this fund concluded at any moment by proof that he is living or that he left heirs living. He or they may appear and demand the estate." This case was

affirmed, and in its opinion the court said: "While it may be conceded that the Orphans' Court might have entertained such a bill for the correction of a manifest error of fact, it is not clear that it could do so for an error of law which might have been the subject of appeal, and certainly no case has been brought to our attention which holds that it must do so."

We do not consider the above case in conflict with our decision; in fact, it rather confirms it. The main thing in the mind of the court was the preservation of the estate of the presumed decedent if he were alive, and this we will do by requiring security to be given by the distributees; but we do not think this is a necessary requirement in all cases, but should be left to the discretion of the judge before whom the hearing is had. We can find nothing in the foregoing cases or in any others which precludes the finding of the presumption of death in connection with the audit of an estate of a decedent, where the sole question is the ascertainment of the proper distributees of the fund. It is a common practice in the auditing of accounts to make distribution on the strength of testimony of witnesses who claim to know the fact of death. Why, then, is it not permissible to determine the fact of death when the testimony raises a presumption?

The fund in this case will be distributed among the eleven cousins named in the audit statement, subject to assignments and attachments; but each distributee shall file his own bond without sureties in double the amount of the portion of the presumed decedents' shares which each one receives, conditioned that if either or both of said presumed decedents were alive on Aug. 27, 1928, such amounts received will, on demand, be refunded to said presumed decedents or their legal representatives.

From William J. Aiken, Pittsburgh, Pa.