## In re Holst

*Robert L. Blum,* for petitioner.

MIHALICH, *J.,* September 24, 1992—This case comes before this court on a "petition to establish death of absentee" pursuant to 20 Pa.C.S. §5701 *et seq.,* filed on May 12, 1992, by Lorrie Jean Holst, wife of Robert Allen Holst, the absentee. The petition recites that Robert Allen Holst was exposed to a specific peril of death and prays that this court enter a decree declaring Robert Allen Holst a presumed decedent as of December 9, 1991.

The facts established by the evidence may be summarized as follows:

(1) The petitioner, Lorrie Jean Holst, is the wife of Robert Allen Holst (hereinafter referred to as the absentee).

(2) Prior to his disappearance, the absentee, a licensed neurosurgeon, sold his medical practice. The petitioner testified, however, that as of January 1, 1991, the absentee continued practicing medicine on a part-time basis while spending the rest of his time on his sailboat.

(3) The last known residence of the absentee was 121 Club Manor Road, Latrobe, Westmoreland County, Pa.

(4) The absentee has four daughters: Lori Lynn, 17, Nicole Renae, 14, Allison Gail, 11, and Lindsay Jenna, 4. Allison Gail and Lindsay Jenna are children of the petitioner and absentee. Lori Lynn and Nicole Renae are the absentee's children from a prior marriage and reside in Colorado with their natural mother.

(5) The absentee left a will dated September 25, 1988, naming the petitioner as his sole beneficiary. The petitioner also holds the absentee's power of attorney, which she used to effectuate the sale of the absentee's sailing vessel subsequent to his disappearance.

(6) Prior to his disappearance, the absentee:

(a) was experiencing severe financial difficulties and owed the IRS more than $120,000;

(b) was named as a defendant in several malpractice suits;

(c) was subject to foreclosure on several parcels of real estate;

(d) owned very few assets in the United States;

(e) had financial obligations which far outweighed his assets and income;

(f) had allowed his life insurance to lapse, despite his allegedly close relationship with his wife and children;

(g) was living a very expensive lifestyle with no substantial means of income;

(h) had established a number of secret bank accounts in the Bahamas under fictitious names. Because the laws of the Bahamas prohibit the disclosure of information relative to these accounts, however, this court has no knowledge of the title of these accounts, the number of accounts, the amount of monies invested in the accounts, the beneficiaries of the accounts, or whether there have been any withdrawals from these accounts since December of 1991.

(7) On October 14, 1991, the absentee left his residence for a trip to the Caribbean Islands aboard his sailing vessel, a 40-meter Cadillac Catamaran. To navigate from ship to shore, the sailing vessel was equipped with a six to eight foot dinghy.

(8) The petitioner last spoke to the absentee on November 24, 1991. During that conversation, the absentee

informed the petitioner (1) that he was planning to sail alone from Georgetown to Jamaica; and (2) that he would be unable to contact the petitioner again until he reached Jamaica.

(9) The absentee is an experienced seaman who frequently voyaged alone for extended periods of time.

(10) The absentee was last seen in his dinghy heading toward his catamaran on Long Island, Bahamas, at approximately 7 p.m. on December 1, 1991. The circumstances surrounding his disappearance are as follows:

(a) On December 1, 1991, the absentee frequented two drinking establishments on Long Beach Island, Bahamas, where he drank a total of one pint of rum, but did not appear to be incapacitated.

(b) At approximately 7 p.m. two persons, Austin Mills, principal of Mortimer Public School, and Warren Watson, a fisherman, accompanied the absentee to the shore where the absentee's rubber dinghy was anchored.

(c) The dinghy was not equipped with water, food, or medical supplies. There was one paddle on the dinghy and a small engine. The absentee told Austin Mills that he did not intend to use the engine because the wind was strong enough to "blow him on board" his sailing vessel (petitioner's Exhibit 9, Deposition of Austin Mills, page 13-14). Accordingly, the absentee did not even try to start the engine, but instead started to row towards his sailing vessel anchored approximately one-half mile from shore.

(d) There was no moon on the night of December 1, 1991, the sky was very dark, and the winds were blowing from the east at approximately 25-30 miles per hour.

(11) The U.S. Coast Guard conducted a search for the absentee from December 6, 1991, through December 9, 1991.

(12) The Royal Bahamas Police Force also conducted a search and issued a missing persons report, all to no avail.

(13) On December 5, 1991, the petitioner was informed of her husband's absence. Thereafter, on December 14, 1991, the petitioner arrived at the anchored sailing vessel and found everything to be intact, except for two binoculars and a Pentax camera that were missing.

## DISCUSSION

The petitioner requests this court to declare her husband, Robert Allen Holst, dead pursuant to 20 Pa.C.S. §5701 *et seq.* Section 5701 provides, in relevant part, as follows:

"§5701.   Proof of death

"(a) Finding of death—When a person domiciled in the Commonwealth disappears and is absent from his place of residence without being heard of after diligent inquiry, the court of the county where he last resided, aided by the report of a master if necessary, upon the petition of any party in interest and, if a trustee has been appointed for the absentee, at any time during the trusteeship, may make a finding and decree that the absentee is dead and of the date of his death, provided the notice required by section 5704 of this code (relating to notice to absentee) has been given to the absentee.

"(b) Presumption from absence—When the death of a person or the date thereof is in issue, his unexplained

absence from his last known place of residence and the fact that he has been unheard of for seven years may be a sufficient ground for finding that he died seven years after he was last heard of.

"(c) Exposure to specific peril—The fact that an absentee was exposed to a specific peril of death may be sufficient ground for finding that he died less than seven years after he was last heard of.

"(d) Competency of witnesses—All persons shall be competent to testify concerning the death or disappearance of an absentee regardless of relationship by marriage to him or of interest in his estate."

In the case at bar, it is clear that seven years have not elapsed since Robert Allen Holst disappeared without explanation. In fact, the "petition to establish death of absentee" was filed only five months after the absentee's disappearance. Thus, there continues a presumption of life and the burden is upon the petitioner to show by a fair preponderance of the evidence that Robert Allen Holst had been exposed to an earlier peril of death. *In re Kerstetter,* 399 Pa. Super. 632, 582 A.2d 1122 (1990); *Groner v. Knights of Maccabees,* 265 Pa. 129, 133, 108 A. 437, 438 (1919); *Young v. Sweigart,* 69 Pa. Super. 525, 528 (1918); *Herold v. Washington National Insurance Co.,* 128 Pa. Super. 563, 194 A. 687 (1937). Moreover, "[t]o accelerate the presumption from time, or more properly to turn it from an artificial into a natural one, it is necessary to bring the person within the range of a particular and immediate danger." *Fanning v. Equitable Life Assurance Society,* 264 Pa. 333, 338, 107 A. 715, 716 (1919).

It is the opinion of this court that the evidence was not so substantial that it could be said with confidence that Robert Allen Holst is deceased. Granted, the court is satisfied that the caliber of the absentee's dinghy and motor, as well as the wind and sailing conditions, were less than ideal on the night of December 1, 1991. Additionally, the court is impressed by the testimony of Michael Greenwald, author and experienced seaman, regarding the absentee's ability to survive had he been swept out to sea.

Notwithstanding such evidence, however, the court can not ignore the multitude of inconsistencies and the enigma surrounding the disappearance of Dr. Holst. For example, the evidence revealed that there were only two persons who allegedly saw the absentee go aboard his dinghy on the night of December 1, 1991. One of those witnesses, Austin Mills, had never met the absentee until the afternoon of his disappearance. The other alleged witness, Warren Watson, was not deposed because he was "somewhere on a fishing trip." (Petitioner's Exhibit 9, Deposition of Austin Mills, page 13). Apparently, both witnesses had been drinking the day of the disappearance.

Assuming arguendo that the absentee *did* in fact board the dinghy under the conditions described by Austin Mills, the official search and rescue report issued by the U.S. Coast Guard with respect to the disappearance of Robert Allen Holst clearly indicated that:

" A very good search was conducted of the Jumento Cays, however, there is a good chance that the dinghy may have easily passed through the island chain. The

winds and currents favor this occurring." (Petitioner's Exhibit 3).

Furthermore, the Coast Guard report also revealed that on December 8, 1991, the absentee's eldest daughter, Lori Lynn Holst, told a Coast Guard officer that her father: "may have gone sailing with someone else. He had mentioned that he had met some Canadians that wanted him to sail with them. Maybe he took his Zodiac and went sailing with them." (Petitioner's Exhibit 3).

These circumstances, combined with the knowledge that Dr. Holst: (1) had a history of extended sailing voyages; (2) was experiencing severe financial difficulties; (3) was facing numerous malpractice accusations; and (4) had established a number of secret bank accounts of unknown amounts in the Bahamas under fictitious names cause this court to be skeptical about whether the circumstances surrounding Dr. Holst's disappearance substantiate a finding that he is deceased.

Apart from the petitioner's desire to obtain information regarding the secret bank accounts in the Bahamas, the court was not presented with any evidence which would necessitate a declaration of death less than 10 months after the absentee's disappearance. Additionally, this court believes it crucial that the details of the secret bank accounts be revealed *before* a declaration of death can be made. Perhaps this information may be attainable by the appointment of a trustee pursuant to 20 Pa.C.S. §5702.

Given the circumstances of this case, the court concludes that the petitioner has failed to prove by a fair preponderance of the evidence that Robert Allen Holst was ex-

posed to a specific peril of death which would overcome the presumption of life.

The court enters the following

## DECREE

And now, September 24, 1992, the petition of Lorrie Jean Holst to have her husband, Robert Allen Holst, declared dead, is denied.