# Whiteside's Appeal.

1. A fact found by an auditor, is, in this Court, to be taken as true, unless the error be palpable.

2. A testator, by his will written in March 1840, and proved in May of the same year, devised to his son James $500, without interest until he called for the money; and if never called for by him, it was to be paid to his two grand-sons *after the death of the son*. It was to be paid by the legatee out of real estate devised to him. The son was heard from by letter in 1837, but not afterwards by his relatives so far as it appeared: *Held*, that he was presumed to be dead after seven years from the time when he was last heard of, viz., in 1844; and that such presumption was not repelled by the idea that the testa-tor may have supposed him to be alive at the date of the will.

3. The legacy was payable to the son when he called for it; and if not demanded by him, it was payable to the grandsons *after the death of the son: Held*, that the legacy bore *interest* from the time when the death of the son was presumed to have occurred, and not merely from the time of the decree for its payment, viz., in 1853, though it did not appear that payment was demanded before 1852.

APPEAL from the decreè of the Orphans' Court of *Chester county*.

On the petition of James and Samuel McClenaghan, grandsons of Samuel Whiteside, deceased, a citation was awarded in January, 1853, to Samuel Whiteside, Jr., executor and devisee of the land charged, to show cause why the Court should not decree payment of a legacy out of land devised to him by his father.

Samuel Whiteside, of Chester county in this state, made his will, dated March 13, 1840, and proved on 8th May, 1840, wherein, *inter alia*, he devised as follows: "I do leave and bequeath to my son James Whiteside, $500," "to be paid to the said James any time after my death, and no interest paid for the above $500 until he call on the above sum; and, if never called on by said James Whiteside, it is my wish and will, for the said $500 to be paid by my son Samuel Whiteside, Jr., to my two grandsons," "any time after the death of the above James," &c., "*out of my real estate*."

*Samuel* Whiteside was appointed executor, and he was the devisee of a farm, which he has since owned and occupied. *James Whiteside* never demanded the $500. He had gone to the West or Southwest, and had not been heard of by his relatives in Penn-sylvania for above 15 years. A witness, not a relative, so far as it appeared, testified on the hearing before the auditor, in 1853, that James Whiteside came in from the West about 18 years before. He stayed a short time and returned. He said he had never seen

him since, and had never heard anybody say they had seen him since.   His relatives got a letter from him about 16 years ago. He had heard his relatives frequently speak of him, and they said that letter was the last they had heard of him.   The witness never heard that he was married.   A copy of the letter was produced. It was dated from Red River, Arkansas, February 21, 1837, and was addressed to his uncle.   In it he stated the probability, if living and in good health, of his going after the coming summer, into the interior of Texas.

In the answer of the executor was alleged a readiness to pay the $500 to whoever was entitled to it.

The auditor appointed in the matter, expressed the opinion that the death of James Whiteside might, properly, be inferred from the evidence ; and he reported in favor of the payment to the petitioners of $883.49, being the amount of the legacy with interest from April 1, 1844.   The report was confirmed *nisi* on 15th *March*, 1853 ; and on *September* 13, 1853, the Court ordered the payment according to the report of the auditor.

It was excepted, 1. That the evidence was not sufficient to justify the Court in making the decree.   2. That the evidence did not raise a presumption of the death of James Whiteside at any time, and much less of his death in 1844.   3. But if a presumption of his death existed, the Court erred in decreeing interest from April 1, 1844.

*W. Darlington* and *Hickman* were for appellant.—It was contended that the testimony as to the death of the legatee was unsatisfactory.   It was from a single witness.   The fact of the son not having been heard of for seven years, should be proved by persons who would be likely to hear from him if alive—viz., by persons interested in him—related by blood or marriage : 1 *Greenleaf Ev.* 103.

2. It was, *inter alia,* contended that, in this case, the death was merely a presumption of law, and that it was *the decree* which established the death ; therefore, that interest should be computed only from the date of the decree.

*Pennypacker,* for appellees.—Time was afforded from June till September, 1853, for the respondent to make inquiry in relation to James Whiteside.   Proof that a person has not been heard of for *seven* years is sufficient to rebut the presumption of life : 1 *Rawle* 373 ; 4 *Wharton* 150 ; *Id.* 173.

2. The grandchildren have a right to interest from the time they had a right to receive the legacy, though they did not then demand it : 9 *Ser. & R.* 263, Schaeffer's Estate.   A legacy charged on lands yielding profits, carries interest from the time it becomes payable, even though no demand were made at that time : Per BELL, J., in Keech v. Speakman, 1 *Pa. L. J.*   He who enjoys the whole

of a fund which is in part charged in favor of another, should admit the other to a share of the profits *pro tanto*.

The opinion of the Court was delivered by

BLACK, C. J.—Here was a legacy of $500 to A., the testator's son, to be paid when called for *without interest*, and if not called for then to be paid to B. and C., two grandsons, *at any time after the death of A.* At the date of the will A. was absent and had not been heard of for several years; and twelve years afterwards, the legacy still remaining unpaid, this proceeding was instituted by B. and C. to recover it. The subject was referred to an auditor, who reported that A had not been heard of since 1837, when he wrote from Arkansas to his relatives here; that he must be presumed dead in 1844; and that the legacy was payable to B. and C. with interest from the latter date. The Court so decreed.

1. The appellant, who was sole executor of the will and devisee of the land on which the legacy was charged, insists that the evidence before the auditor was not sufficient to justify his conclusion. A fact found by an auditor must be taken as true, unless the error be palpable. Here it is not so by any means. The proof might have been stronger and fuller, but it was enough to make out a case *primâ facie*, in the absence of all contradiction. The testimony of a relative would have been more satisfactory than that of a mere neighbor and friend; but if the members of the family had heard of the person in question more lately than 1837, why did not the executor call them? If there was any serious doubt upon this question, it would most probably have been contested before a jury. These considerations satisfy us that we do no wrong in treating the report as a verity. We cannot but believe that a further investigation of this point would result in the same way.

2. But it is further argued that the evidence, if taken for true, does not raise the presumption of the primary legatee's death until 1847, because in 1840 (the date of the will) he was assumed to be a living man by the testator. This proposition is wholly unsound. The testator had no ground for believing him dead within three years after the date of his letter; though he was evidently uncertain about it: he contemplates that the legacy will never be called for as a probable contingency, and therefore bequeaths it over. But it is no matter what the testator thought. A person is presumed to be dead after the lapse of seven years from the time when he was last *actually* heard of, and this presumption is not repelled by the fact that somebody *supposed* him to be living at a later period.

3. The appellant thinks he can concede the facts found by the auditor, and still show the decree against him for *interest* to be wrong as matter of law. He bases this argument on the words of the testator, by which he gives the money to his son *when called*

*for ;* he did not intend to put his grandsons in any better position, and therefore it was to be paid to them also when called for. But the words of the will contradict this. The legacy is payable to the son when demanded, and to the grandsons *at the death of the son.* When did that death occur? The law presumes it to have happened in 1844. It was the executor's duty to pay it, then. The rule being well settled that a legacy bears interest from the time when it is made payable by the terms of the will, interest is chargeable here from 1844. The notion that the death of the son was a fact established and proved only by the decree, is altogether wrong. The lapse of time after the legatee had been heard from was a fact, and from that was inferred another fact, namely, his death. Of both these facts the executor was as much bound to take notice as the Court. Judgments and decrees do not make the evidence on which they are founded. Legal tribunals can enforce only those obligations which ought to have been voluntarily performed. If the appellee was right in withholding the legacy, the Court was wrong in ordering that he should pay it. It is reversing the rule of right reason to say that this man is dead merely because of the decree : the decree was made because his death had been previously ascertained.

Decree affirmed.