Volmer, Appellant, *v.* John Hancock Mutual Life Insurance Company.

118

Argued November 19, 1930.

Before TREXLER, P. J., KELLER, LINN, GAW-
THROP, CUNNINGHAM, BALDRIGE and WHITMORE, JJ.

*John E. McDonough,* for appellant.—The decree of
the orphans' court was evidence of the fact of death:
Roblin v. Knights of Maccabees, 269 Pa. 139; Cunnius
v. Reading School District, 206 Pa. 469; Devlin v. Com-
monwealth, 101 Pa. 273.

*D. Malcolm Hodge* of *Hannum, Hunter, Hannum and
Hodge,* for appellee.—A decree of the orphans' court
declaring that the presumption of death of an absentee
has arisen, is not evidence of the fact of his death in
a suit brought on an insurance policy covering his
life, by an individual named as beneficiary therein:
Walker v. Philadelphia, 195 Pa. 168.

If such a decree were admissible as evidence of the
fact of death of the insured in such a suit, it would

not be conclusive of such fact: McPherson v. Cunliff, 11 S. & R. 422; Maley v. P. R. R. Co., 258 Pa. 73; Groner v. Knights of Maccabees, 265 Pa. 129.

OPINION BY BALDRIGE, J., February 27, 1931:

This is an action of assumpsit brought by Mary Volmer to recover the sum of $250, with interest, on a life insurance policy, dated April 12, 1910, issued by the defendant on the life of Harry H. Volmer, payable upon his decease to his wife, the plaintiff. The case was tried before the learned court below, without a jury, under the Act of April 22, 1874, P. L. 109, and a judgment was rendered in favor of the defendant. Plaintiff appealed.

The insured, who was thirty-nine years of age when he left home, was born in Germany where a brother and sister were living; he had lived in Delaware County with his wife and two children for about ten years. He left his home on May 10, 1919, about 12:30 o'clock, informing his wife that he was going to see a Mr. Poulson about a house. Mrs. Bradley, a sister-in-law who lived in Ohio, visited the Volmers in the early part of 1919 and while there agreed to purchase a property from Dr. Lyons. She then returned to Ohio and a day or two prior to May 10, 1919, forwarded to Volmer a bank draft to his order, in the sum of $1,000, to be used to consummate the purchase of the real estate. This draft, the insured cashed on May 10th, but never paid the money to Dr. Lyons or Mrs. Bradley. A nephew of Volmer and a friend, at the suggestion of the plaintiff, tried to locate him on the day he left home. They found him about 5:00 o'clock in the city of Chester and told him that the plaintiff was worried and wanted to see him; at that time he had a roll of money in his hand. Volmer went, with either the nephew or the friend, to Marcus Hook, where the insured went

into a hotel and was not seen again. The plaintiff on May 12, 1919, sent the following telegram to Mrs. Bradley: "Do not move on, Harry has beat it with the money. Will write later." On May 16, 1919, she sent a letter to Mrs. Bradley in which she said, "So far as I am concerned, you can make it just as hot for him as you want, for my part of it, for he has done this dirty to us so often. Everytime he goes away, he gets his mustache shaved off. If I hear or see anything of him, I will let you know right away."

Mrs. Bradley, learning of Volmer's conduct, swore out a warrant for his arrest, charging larceny as an employe, etc., and a true bill was duly found, and a short time thereafter, the plaintiff swore out a warrant for non-support. About a year and a half after Volmer disappeared, the plaintiff told Mrs. Bradley that the warrant she had issued for his arrest kept him away. On two previous occasions he had left his wife, remaining away the first time about three months without informing her, and on the second occasion he went to California, not stating where he was going, and remained about two months, but wrote to her after he arrived there.

On May 17, 1926, the plaintiff presented her petition to the orphans' court of Delaware County, setting forth the disappearance of her husband on May 10, 1919, and that he had been absent and unheard of since that date, and prayed the court to decree the presumption of his death and to authorize the register of wills of Delaware County to grant letters of administration, as provided by the Fiduciaries Act of June 7, 1917, P. L. 447. On December 20, 1926, final decree of the legal presumption of the death of Harry Volmer was entered and the register of wills was authorized to issue letters of administration to the wife.

Three questions are raised by this appeal: (1) Was the orphans' court decree evidence in an action brought

on an insurance policy on the life of the insured by an individual named as beneficiary therein? (2) If such a decree was admissible as evidence of the death of the insured, was it conclusive proof thereof? (3) Was there sufficient evidence before the trial judge that proofs of death had been furnished by the beneficiary as required by the terms of the life insurance policy?

The Fiduciaries Act of 1917, supra, Sec. 6, is a combination of the Act of June 24, 1885, P. L. 155, and Sec. 1 of the Act of May 28, 1913, P. L. 369. Discussing the Act of 1885, Mr. Justice MITCHELL, in the case of Cunnius v. Reading School District, 206 Pa. 469, said, ".....the act establishes a system, carefully wrought out with due regard to all rights involved, for the administration of estates or property whose owner is legally presumed to be dead, but whose death cannot at the time be proved with absolute certainty...... Its primary purpose as appears......is not distribution, but conservation of the estate, through the medium of an officer clothed with authority to protect and enforce the rights of the unknown owner, the absentee, if alive, his legal successors if he be dead ...... But when a case arises of presumption of death from absence, a question of fact is presented which is essential to the determination of the rights in property whose owner is thus shown to be doubtful." For the protection of the supposed decedent, in case he shall in fact be alive, the Fiduciaries Act provides that no distribution of property shall be made until security is given, approved by the court, for the repayment, with interest.

Keeping in mind, the object of this legislation and the protection afforded in case of distribution, and that the defendant was not a party to, or had a right to control, the proceedings, or make defense thereto (Walker v. City of Phila., 195 Pa. 168), as well as the fact that the plaintiff is suing in the common pleas in

her individual right to recover under a contract, a grave doubt arises whether the decree of the orphans' court is admissible. But it is unnecessary to decide that question for, notwithstanding the lower court's conclusion, it determined further that the plaintiff was not entitled to recover, even if it be assumed that the decree was admissible evidence, as the decree was not conclusive proof of the death of the absentee. With that view we unhestitatingly concur.

The Fiduciaries Act clearly indicates that the decree of the orphans' court in such a proceeding is not a finality; it is but a presumption of the death of a missing person. Must it be considered a conclusive finding in this proceeding because that decree was not revoked? This is not a collateral attack on the decree of the orphans' court, as maintained by the appellant. No one will dispute the exclusive jurisdiction of that court in the granting of letters. But the granting or rejecting of letters, or the jurisdiction of the orphans' court, is not in any way involved in this action. Any amount recovered under a verdict would not be for distribution in the course of administration of the supposed decedent's estate. As already noted, we are dealing with the right of an individual to recover in the court of common pleas under the terms of a written contract. Recovery is not dependent upon the proof of presumption of death. Before a recovery can be had, the plaintiff is required to show by the weight of the evidence that the insured is, in fact, dead. A legal presumption is but an aid to reasoning and argumentation which assumes the truth of certain matters for the purpose of some inquiry. It takes something for granted by assuming its existence but leaves open for further inquiry as to the matter thus assumed. The prima facie assumption of death casts upon the party, against whom it operates, the duty of going forward in argument or evidence. The fact of

absence should be taken into consideration with all the other evidence.

Com. ex rel. Mothers' Assist. Fund v. Powell, 256 Pa. 470, was a case brought under the Act of June 18, 1915, P. L. 1038, which provides for the payment to indigent, widowed or abandoned mothers, for support of their children, whose husbands "are dead or permanently confined in institutions for the insane." The late Chief Justice BROWN, in delivering the opinion, said, "While the rule is well settled for most judicial purposes that there is a presumption of the death of a person of whom no account can be given at the expiration of seven years from the time he was last known to be living, this presumption, like others of fact, may be overcome by legitimate evidence opposed to it...... When the legislature made provision for women 'whose husbands are dead,' it is to be conclusively presumed that husbands are actually dead, and not merely presumably so; " and cites with approval Chamberlayne on The Modern Law of Evidence, Vol. II, Sec. 1117: "Any fact which fairly and reasonably tends to rebut the inference assumed to be correct in the presumption of death is admissible. For example, it may be shown by the opponent that the absentee had a motive for his silence, as that he was a fugitive from justice, had absconded from his creditors or has some other reason for concealing his identity."

In Maley v. P. R. R. Co., 258 Pa. 73, an action was brought to recover the amount to the credit of the decedent in the employes' savings fund of the defendant company. In discussing the Act of 1885, supra, the court held that there is nothing in the act which indicates an intention on the part of the legislature to confer upon the orphans' court exclusive jurisdiction of the determination of the fact of death by reason of absence, and said, "This question may, and infrequently does, arise in collateral proceedings

where the object is not to distribute the estate of the absentee, and where the court has complete jurisdiction of the subject matter."

In Groner v. Knights of Maccabees, 265 Pa. 129, the supreme court called attention to the plaintiff's depending upon evidence of *facts* justifying the presumption of her husband's death after seven years' unexplained absence. The lower court's charge, which was approved by the higher court, called the jury's attention to the fact that it is not only the absence of a man for seven years, but his *unexplained* absence that raises the presumption of death; and cited with approval Whiteside's Appeal, 23 Pa. 114, wherein the court said, "In affirming a finding of death, we said 'the proof might have been stronger and fuller, but it was enough to make out a case prima facie.'"

As Judge PENROSE said in Wolff's Estate, 12 W. N. C. 535, "it is clear that the presumption should not be extended; and, if confined to cases where the circumstances are such as reasonably to forbid any explanation of absence other than death, it at least cannot apply to a case like the present where the fact that the person, whose death we are asked to presume, had appropriated trust moneys, and fled to escape the consequences of his dishonesty, fully accounts for his absence, and shows the strongest motive for silence and the concealment of his whereabouts": Com. ex rel. v. Powell, supra.

In 17 C. J. 1168, it is stated in the text "that the presumption of death from unexplained absence is not a presumption of law but a mixed presumption of law and fact which may be rebutted and it will not be indulged where the circumstances of the case are such as to account for the absence of the person without assuming his death."

The appellant relies chiefly upon Cunnius v. Reading School District, supra, and Roblin v. Knights of

Maccabees, 269 Pa. 139. In the School District case, the constitutionality of the Act of 1885 was primarily involved where the defense relied upon was by-laws passed after the supposed decedent had left home and the statute of limitations. But neither of these cases rules the question under consideration.

Our conclusion is that the legislature never intended that a defendant in a case of this character, where the absent person was charged with a serious crime, had to go before the orphans' court and have the letters of administration revoked before he could set up a defense in the court of common pleas explaining the absence of the insured on other grounds than those of death.

There is another formidable obstacle which presents itself as a bar to the plaintiff's recovery. Under the terms of the policy, the plaintiff was required to furnish proofs of death. The only testimony on that question was as follows:

"Q. Did you take with you a certified copy of the decree of the orphans' court setting forth his decease? Did you take with you the papers that I gave you to take over there?

A. Yes, I took them papers over there, and the superintendent—I was talking to him, and he said the declaring of Mr. Volmer dead had nothing to do with the insurance.

Q. Now, then, were there any papers prepared for you to sign there at that time?

A. At the insurance office?

Q. Yes.

A. No. None at all.

Q. He just simply said the fact the court had declared Volmer dead had nothing to do with the insurance policy?

A. That is what he told me."

The failure to furnish proper proofs was specifically

set out as one of the defendant's grounds of defense and this was recognized by the plaintiff, who filed an answer to the affidavit of defense in which she averred specifically that such proofs had been furnished. Her testimony was so vague and indefinite as to be insufficient to establish that fact.

Judgment affirmed.