Gurnacki *v.* Polish Roman Catholic Union of America, Inc. Wincenty Zdanciewicz, Secretary, Appellant.

Argued October 9, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*T. F. Deady,* and with him *Joseph C. Ryszeleski,* for appellant.

*J. N. Landberg,* for appellee.

OPINION BY JAMES, J., May 8, 1934:

On November 23, 1923, appellant, a fraternal bene-

ficial association incorporated under the laws of the State of Illinois and doing business in the City of Philadelphia through a local branch or "group," issued a certificate of membership to one Jozef Gurnacki. This certificate entitled the beneficiary named therein, Gurnacki's wife, to certain death benefits, upon the usual consideration of payment of dues and proof of death of the member. It also expressly provided, however, that payment of benefits was subject to the member's compliance with the organization's constitution and by-laws as they then existed or might thereafter be amended or changed.

Some time later Gurnacki became estranged and separated from his wife, and having lost the certificate, cancelled it and on April 20, 1925, secured the issuance of a duplicate, identical in terms but substituting his brother, the appellee, as beneficiary.

On the following day insured handed this certificate to his brother, with whom he had been boarding since his wife's desertion about two years before, said "I am leaving you, goodbye," took his valise, put his overcoat over his arm, and left. Earlier in the evening he had remarked that he could not stay in the city because of the bad conduct of his wife. His brother, his employer, and the secretary of the local branch of the appellant organization all testified that during the period of the separation insured had been uncommunicative and depressed over his marital difficulties. He had also told his employer that his wife had "made a bad record—conducted herself immorally."

At the time of his departure Gurnacki did not indicate that he intended to establish a new domicile. It is undisputed that his brother, appellee, thereafter sought information concerning his whereabouts among the five hundred odd members that comprised the local branch of the defendant organization, that he inquired

also among his friends and Polish Union members in Manayunk, Nicetown, Richmond, Bridesburg and Frankford, and that he continued the inquiry from the time of his brother's departure until Easter, 1931, by writing more than thirty letters to friends and relatives in Chicago, Pittsburgh and New York. The secretary of the defendant organization also made similar inquiries. Both their efforts were of no avail.

After Gurnacki had been absent and unheard of for a period of seven years the plaintiff beneficiary, having meanwhile continued to pay the required dues and assessments, and the defendant's secretary having continued to receive the same, brought this suit in assumpsit to recover the benefits named in the certificate. The case was tried before a judge of the court below, sitting without a jury, who found for the plaintiff and entered judgment for the full amount of the claim, subsequently dismissing motions for judgment *non obstante veredicto* and for a new trial.

These rulings and the refusal of the trial judge to admit in evidence certain paragraphs of the pleadings raising the question of lack of due proof of death, are assigned as errors. They present for decision the questions whether there was sufficient evidence upon which to predicate a presumption of death, and whether a by-law of a fraternal benefit association, adopted in September, 1931, six and one-half years after a member's disappearance, changing the period after which presumption of death arises from the seven-year rule established at common law to the period of natural expectancy of the member's life at the time of entry, is operative against a member whose contract of insurance binds him to subsequently enacted changes of the by-laws.

In passing upon the sufficiency of the testimony, upon which the presumption of death is predicated, which presumption was found by the court below to be

applicable, we must assume the truth of plaintiff's evidence and adopt every inference fairly deducible therefrom. Lincoln v. Christian, 94 Pa. Superior Ct. 145, 150. Thus considered the evidence was sufficient. The cases relied upon by the appellant, wherein the presumption was held not to prevail, do not apply. In Wolff's Estate, 12 W. N. C. 535, the presumed decedent had left home because of fraudulent money transactions; moreover, the evidence of inquiry regarding his whereabouts was very weak. In Volmer v. Life Insurance Company, 101 Pa. Superior Ct. 117, the alleged decedent, after disappearance, was indicted for larceny and was also subject to arrest for nonsupport; here, also, the testimony offered to meet the proof of death required by the policy was vague and indefinite. To the circumstances appearing in these two cases the court correctly applied the principle that "the presumption of death from unexplained absence is not a presumption of law but a mixed presumption of law and fact which may be rebutted and it will not be indulged where the circumstances of the case are such as to account for the absence of the person without assuming his death." (17 C. J. 1168, cited with approval in Volmer v. Life Insurance Company, supra). In both these cases there was on one hand the rebuttable presumption of death; on the other, evidence of a more probable explanation of his absence outweighing the presumption. But in the instant case no such rebutting circumstances existed. It is true that his wife, whom he deemed unfaithful, still remained in the city and that this fact affected his mental state, or even made life unendurable for him there, but there is no reason why her infidelity would not have rendered his condition unendurable anywhere and motivate self-destruction as plausibly as it might prevent his return. Beyond this there was strong evidence of inquiry which failed to disclose his where-

abouts when there was no reason why he should remain silent or seclude himself from his relatives and friends. We find no merit in appellant's third and fifth assignments of error.

Was the subsequently enacted by-law of the appellant organization operative against the beneficiary? The certificate issued to the member expressly stipulated: "It is further agreed by the member holding this certificate, that ...... any changes, additions or amendments to said charter ...... or laws duly made or enacted subsequent to the issuance of this certificate shall bind the member and his beneficiaries and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership."

This reservation in the certificate follows the language of Section 8 of the Act of May 20, 1921, P. L. 916, (40 PS 1019) which provides: "...... and any changes, additions or amendments to said charter or articles of incorporation, or articles of association if a voluntary association, constitution, or laws, made or enacted subsequent to the issuance of the benefit certificate, shall bind the member and his beneficiaries in all respects the same as though such changes, additions or amendments had been made prior to, and were in force at the time of, the application for membership."

This section has not been judicially interpreted. In Roblin v. Supreme Tent of the Knights of the Maccabees, 269 Pa. 139, 112 A. 70, (decided before the Act of 1921, supra) the insured was issued a certificate of membership conferring benefits upon satisfactory proof of death, provided that the member complied with the constitution and laws which were in force at the time of the issuance of the certificate, or might thereafter be adopted by the organization. Later, he

disappeared and remained absent and unheard of until a presumption of death matured. All dues and assessments were paid until his presumptive death was decreed by the orphans' court. Defendant relied on a by-law adopted two years after the member's disappearance which required "conclusive proof" of the member's death aside from any presumption that might arise by reason of his absence. The court said (p. 142): "A by-law to be valid must be reasonable in character, ...... but here it is not, as affecting an outstanding certificate, ...... especially that of one who had already been absent for two years. True, the certificate provides that the member shall abide by by-laws thereafter enacted, and that is valid in so far as his rights depend upon by-laws; but substantial rights which rest upon the contract can not be abrogated by new by-laws, even where the power to make them is reserved." Except for the intervening statute the cited case differs from the one at bar only in the particular that in the latter the by-law does not seek totally to abrogate the rule of law regarding presumed decedents, but substitutes for the presumptive period established at law, a different period, namely, the member's natural expectancy of life at the time of his entry.

The question was again considered in Coffey v. The Maccabees, 292 Pa. 58, 140 A. 551, decided after the effective date of the Act of 1921. Here the court decided that a by-law forfeiting the certificate of any member who remained absent for a year or more without reporting to his lodge, adopted after the issuance of the certificate but before the member's disappearance, was valid. It distinguishes the Roblin case, supra, saying (p. 62): "That case held that there could not be a change in the member's status by by-laws enacted two years after the member disappeared." Citing this decision further (p. 62): "It

was suggested in argument that the defendant is a Michigan corporation and that the Michigan courts in the case of Samberg v. Maccabees, 158 Mich. 568, held such a by-law as we are considering invalid. What that case decides is not that such a by-law as is before us requiring a member to report his whereabouts yearly is invalid, but that a by-law of a fraternal association which attempts to abrogate a statute which raises a presumption of death from an absence of seven years is invalid as to a policy executed prior to the adoption of the by-law. We are not here dealing with the presumption of the death of John H. Coffey but with his failure to comply with the by-law and his consequent suspension from the order.''

The distinction is apparent. A by-law requiring a member to report to his lodge yearly, though subsequently enacted, is a reasonable provision which he as a member is assumed to know, and by which, under the commitment of his contract and the Act of Assembly, he is bound. But the reservation in the certificate and the provision of the Act of 1921 refer only to reasonable by-laws subsequently enacted, and we can not find that the by-law under discussion is such. It provides: ''The absence or disappearance of a member, whether admitted heretofore or hereafter, from his last known place of residence and unheard of, shall not be regarded as any evidence of the death of such member, nor give or create any right to recover any benefits on any certificate ...... in the absence of proof of his actual death, aside from and unassisted by any presumption arising by reason of such absence or disappearance, until the full term of his life expectancy at his age of entry, according to the table of life expectancy, has expired ......''

This by-law affected an outstanding certificate of one already absent for a period slightly less than required to create the presumption of his death; it dis-

turbed substantial rights resting upon contract by abrogating the common law rule regarding presumed decedents and substituting another. Under these circumstances we must find it invalid.

The first assignment of error complains of the refusal of the trial judge to admit in evidence paragraph 15 of the plaintiff's reply to New Matter in the affidavit of defense as an admission that plaintiff failed to furnish due proof of the death of the member. The averment in the reply, which defendant contends was an admission was as follows: "Proof of death under benefit certificate of insurance herein is required in case of natural death only. Plaintiff further avers that he personally, orally discussed the matter of adjustment of his claim prior to and on or about April 21, 1932, with Vincent Zdanciewicz, secretary of Group 125, of said defendant corporation, at Philadelphia, and said official orally informed deponent that he had taken up the matter with Attorney Joseph Ryszeleski, then counsel for said corporation, in Philadelphia, and that the latter had advised the said local secretary that no settlement would be made, and that recourse to court would be necessary."

Very clearly plaintiff intended in this paragraph to set out a waiver of proof of loss by officers of the corporation, and the testimony of the Group secretary is sufficient to warrant such a finding. But neither the question of whether such proofs are necessary in the face of adequate proof of presumptive death, or whether the officers had authority to make the waiver, is before us, as the assignment of error complains only of the court's error in not finding that the answer constituted an admission.

Defendant urges further that the failure to file proofs of death is controlled by Volmer v. John Hancock et al., 101 Pa. Superior Ct. 117. But the situation at bar is clearly distinguishable. Here the plain-

tiff averred facts, sufficiently established by evidence, that would constitute a waiver, while in the cited case the plaintiff specifically averred that proofs of death had been furnished, which fact she failed to establish.

The judgment of the court below is affirmed.