## Grunda, Appellant, *v.* First Lithuanian Building and Loan Assn.

Argued September 30, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Walter I. Summerfield,* for appellant.

*Hubert J. Horan, Jr.,* with him *T. F. Deady,* for appellee.

OPINION BY KELLER, P. J., November 10, 1937:

This is an action in assumpsit, brought in October, 1936, by John Grunda against First Lithuanian Building & Loan Association to recover the withdrawal value of ten shares of stock issued by the defendant association to "John Grunda and Anna Grunda, his wife." The plaintiff claimed the right to demand that the withdrawal value of the stock be paid to him alone—instead

of to him and his wife jointly—because, he averred, that Anna Grunda, his wife, left her home on April 2 or 3, 1929, and had not been seen or heard from since that time, and she was, therefore, presumed to be dead.

The trial judge, sitting without a jury, at the conclusion of the plaintiff's case, entered a compulsory nonsuit. This appeal was taken from the order discharging the rule to take off the nonsuit.

The only witnesses who testified were the plaintiff, John Grunda, Tillie Zukauskas, who was connected by marriage with Anna Grunda—Anna being the daughter of Tillie's brother-in-law—and Julian Zukauskas, Tillie's son who was fifteen years old in 1929.

The plaintiff testified that when he came home from work on April 2d or 3d, 1929, his wife had gone, taking with her all her clothes, and that he had never seen or heard from her since. They were Lithuanians and apparently had few local friends or acquaintances. He made some inquiries as to her whereabouts among his local acquaintances, but received no information, except that a shoemaker living near by had seen her leave with a basket of clothing. The record fails to show that he consulted the local police, or made any inquiries elsewhere through the Lithuanian consulate, or sent any letter to the place in Lithuania from which he and his wife had come asking for information about her, or made any reasonable attempt to locate her following her going away. The evidence as to the plaintiff's inquiry was meager and unsatisfactory, and was an insufficient base on which to rest a presumption of death following seven years' unexplained absence.

Besides, it was shown that on June 9, 1930, this plaintiff presented to the defendant building and loan association an affidavit purporting to have been signed and sworn to, on that day, by himself and his wife, Anna, asking for the issuance of a new stock certificate for the original which was said to have been lost or mislaid,

and also a transfer or assignment of the stock to the association, in an endeavor to collect the withdrawal value. It is true that he explained this by asserting that Tillie Zukauskas had impersonated his wife, and signed her mark to both papers and had made the affidavit for his wife; and on the trial Tillie swore to the same effect; but their admissions of false swearing and impersonation affected their credibility; and would have warranted a finding by the trial judge adverse to the plaintiff.

In order to support a presumption of death following seven years' absence or disappearance, the absence or disappearance must be unexplained: *Volmer v. John Hancock Mut. Life Ins. Co.*, 101 Pa. Superior Ct. 117; *Groner v. Knights of Maccabees,* 265 Pa. 129, 108 A. 437. If the facts presented on the trial carry with them a reasonable explanation of the absence, other than death, showing a motive for the party's absence and silence, the presumption does not take effect. It is "confined to cases where the circumstances are such as reasonably to forbid any explanation other than death" (*Volmer v. John Hancock Mut. Life Ins. Co.,* supra, p. 124.)

So, too, the evidence should establish a reasonably sufficient inquiry concerning the absence or disappearance of the supposed decedent. Judge PENROSE, in *Wolff's Est.,* 12 W. N. C. 535, said: "The evidence of inquiry, it may be added, is wholly insufficient. A single witness testified that he 'had asked people in New York whether they had ever heard or known of him, but they never heard anything'; and that he had written to the keeper of a hotel in that city where the person had stayed for some time after his flight, and, in reply, had been informed 'that he had left there, but did not tell where he was going to.'"

Except where a specific peril is relied on to establish the death, a reasonably diligent search or inquiry should be shown—(unless unusual circumstances, not appear-

ing in this case, are present and show the futility of such inquiry, *Maley v. Penna. R. R. Co.*, 258 Pa. 73, 82, 101 A. 911)—before the presumption of death following seven years' unexplained absence will attach. See *Wiggins v. Western & Southern Life Ins. Co.*, 114 Pa. Superior Ct. 198, 200, 173 A. 751; *Groner v. Knights of Maccabees*, supra, pp. 132, 133; *Miller v. Beates*, 3 S. & R. 490; *Mutual Benefit Company's Petition*, 174 Pa. 1, 2, 34 A. 283.

All of the evidence produced by the appellant shows an intentional leaving by his wife of their common dwelling, which was intended to be permanent, and explains her subsequent failure to communicate further with him, and, taken in connection with his insufficient inquiry as to her subsequent actions and whereabouts, warranted the action of the court below in entering the compulsory nonsuit and its subsequent refusal to take it off.

The order is affirmed.