## McNulty v. General American Life Insurance Company, Appellant.

Argued April 30, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*P. K. Motheral,* with him *Reed, Smith, Shaw & Mc-Clay,* for appellant.

*G. Richard Klare,* for appellee.

OPINION BY BALDRIGE, J., September 9, 1943:

This action in assumpsit was brought to recover the amount alleged to be due under the terms of a policy of insurance issued on the life of John F. McNulty, payable upon his decease to his wife, the plaintiff. The question in dispute is whether the plaintiff proved the death of the insured.

The plaintiff relied on the common law presumption that the death of her husband had arisen after an unexplained absence for seven years. She and the insured, both then residents of Pittsburgh, were married in August 1933. The plaintiff last saw, heard from, or of, her husband on April 18, 1934, when he left Miami, to where they had moved, with $1500 in his possession to go to Tampa, Florida to purchase a typewriter business. The money had been withdrawn from a joint checking account which Mrs. McNulty said "belonged to both of us" and that they had no financial difficulties or serious differences. Prior to 1932 the insured worked for the Fort Pitt Typewriter Company, as a repairman and salesman. The testimony showed that he indulged excessively at intervals in the use of alcoholic beverages and went on a "bender" for two or three days at a time; that when under the influence of liquor he was pugnacious and regardless of his own physical safety. During these periods he was very morbid and had been known to stay in the garage with the motor of his car running.

The defendant offered in evidence to rebut the pre-

sumption of death certain depositions wherein it appeared that the insured lived in Bend, Oregon from February 1935 to early in September of that year. While there he ran a typewriter repair business in a drug store owned by Lloyd H. Magill in which Kenneth Cruikshank, husband of Elsie Cruikshank, also worked. Mrs. Cruikshank stated in her deposition that she and her husband had arranged with the insured to go into the vintage business in Burns, Oregon on a profit sharing basis. McNulty was to be in charge and the Cruikshanks were "furnishing the finances to start it;" that the insured left Bend on Labor Day to go to Portland to purchase merchandise in pursuance of their plan. The next day he called and told Mrs. Cruikshank he had made a deal and asked her to wire money. She complied with this request but she was not sure whether she sent $375 or $400. That was the last knowledge she had of McNulty. Mr. Cruikshank's deposition was not taken owing to his absence in military service, stationed at San Diego, California.

The defendant introduced in evidence, as an exhibit, a photostatic copy of an application to the State Tax Commissioner of Utah for an operator's license, signed by a John F. McNulty and dated September 10, 1935.

The case was tried before LENCHER, J. sitting without a jury. He found that the presumption of death from a seven year continued and unexplained absence applied as McNulty "has been completely unheard of since September, 1935, when he disappeared from Bend, Oregon, up to and including the date of this trial, December 8, 1942;" that the plaintiff and the insured's relatives have diligently made every reasonable effort to learn of his whereabouts, but their efforts have been unavailing. He accordingly entered judgment in plaintiff's favor and thereafter dismissed defendant's motion for judgment on the whole record.

The defense relied upon was that the presumption of death from a continued absence of seven years was suc-

cessfully rebutted as the insurer proved that when the insured departed from Bend, Oregon he was an embezzler.

When one is absent and unheard of for seven years there arises the presumption of death and unless overcome the amount due under a life insurance policy is payable: *Groner v. Knight of Maccabees,* 265 Pa. 129, 108 A. 437; *Roblin v. Knights of Maccabees,* 269 Pa. 139, 112 A. 70. To support the presumption of death, however, after seven years the absence or disappearance must be unexplained: *Volmer v. John Hancock Mutual Life Insurance Co.,* 101 Pa. Superior Ct. 117, 123. Any fact which fairly and reasonably tends to rebut the presumption is admissible: *Wesner's Estate,* 139 Pa. Superior Ct. 314, 318, 11 A. 2d 521. If, for example, one was a fugitive from justice, or some motive is shown for his absence or concealing his identity, the presumption of death does not prevail: *Commonwealth ex rel Mothers' Assistance Fund v. Powell,* 256 Pa. 470, 100 A. 964; *Gardner v. Northwestern Mutual Life Ins. Co.,* 274 N. Y. S. 256, 259, affirmed in 275 N. Y. S. 996, 242 App. Div. 886. If, therefore, McNulty had in fact committed a crime that would account for his disappearance and the presumption of death would be inoperative. This presumption is 'confined to cases where the circumstances are such as reasonably to forbid any explanation other than death': *Volmer v. John Hancock Mutual Life Ins. Co.,* supra, p. 124. See also, *Grunda v. First Lithuanian B. & L. Assn.,* 128 Pa. Superior Ct. 604, 607, 194 A. 747.

The presumption of death naturally depends upon the circumstances in each case. The sufficiency of the evidence to rebut the presumption, once it is shown to exist, is a question of law: Wigmore, Evidence, Third Edition, Vol. IX, §2531b, p. 473. The truth, however, of plaintiff's evidence, upon which the presumption of death is predicated, and every inference fairly deducible

therefrom must be assumed by the court in determining that question: *Gurnacki v. Polish Roman Catholic Union*, 113 Pa. Superior Ct. 189, 192, 193, 172 A. 480.

Here the alleged wrongdoing of the insured is a matter of inference and a question for the trier of facts. It could be legitimately inferred that he had made an outright loan from the Cruikshanks and therefore the relation between them was that of a debtor and creditors. Mrs. Cruikshank did not say that the insured embezzled money belonging to them, nor was any criminal or civil proceeding instituted alleging a wrongdoing upon the insured's part. We concede that the judge, sitting as a trier of facts, could have found that the insured absconded with their money, but he determined otherwise. This court is required to review the testimony in a light most favorable to the plaintiff and the findings of the trial judge cannot be disturbed if, as here, there is sufficient evidence to support them: *Madison et al. v. Lewis*, 151 Pa. Superior Ct. 138, 140, 30 A. 2d 357; *Bonenberger v. Pittsburgh Mercantile Co.*, 345 Pa. 559, 563, 28 A. 2d 913; *Gurnacki v. Polish Roman Catholic Union*, supra. The evidence relied upon by the insurance company was not of such a character as to warrant our holding as a matter of law that it rebutted the presumption of death after a seven year absence: *Wiggins v. W. & S. Life Insurance Co.*, 114 Pa. Superior Ct. 198, 201, 173 A. 751.

No discussion is necessary relating to the sufficiency of the evidence to show that the plaintiff discharged her duty of making a reasonably diligent search and inquiry in an endeavor to locate her absent husband; in fact the appellant raises no question as to that matter: *Grunda v. First Lithuanian B. & L. Assoc.*, supra, p. 607.

We appreciate that the presumption of death after seven years unexplained absence must be applied with caution to prevent fraud and injustice upon the insurer. This case in our opinion is close, but after a

careful study of the evidence and the application of the appropriate legal rules we have concluded that the finding of the judge sitting without a jury should not be disturbed.

The judgment of the court below is affirmed.