## Kimple v. Standard Life Insurance Company

*Joseph Knox Stone*, for plaintiff.
*Moorhead, Marshall & Sawyer*, for defendant.

BRAHAM, P. J., fifty-third judicial district, specially presiding, June 22, 1944.—Plaintiff having recovered a directed verdict for $1,194.14, defendant has filed a motion for judgment n. o. v. and for a new trial.

Plaintiff's suit is upon an insurance policy on the life of her son, William Ward Kimple. Her proof of his death consisted of the offer of a decree of the Orphans' Court of Beaver County at no. 18, September term, 1942, in a proceeding under the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 6(a), as last amended by the Act of August 5, 1941, P. L. 836, 20 PS §371, in which the presumption of his death after more than seven years' unexplained absence was established.

At trial defendant did not offer to show that William Ward Kimble was alive; instead it sought to impeach the decree of the orphans' court by showing that no proper efforts to locate the missing man had been made and, in particular, that advertisement had not been extensive enough. The present contention of defendant is quite different. It is now contended that the decree of the orphans' court was inadmissible and hence there was no proof of the death of William Ward Kimple.

It is now established that a decree of the orphans' court establishing the presumption of death is admissible in an action in the common pleas to recover on the

insurance policy: Wiggins v. W. & S. Life Ins. Co., 114 Pa. Superior Ct. 198. It is not a conclusive presumption: Volmer v. John Hancock Mutual Life Ins. Co., 101 Pa. Superior Ct. 117; but defendant may rebut the presumption by any relevant testimony sufficient for the purpose: Wesner's Estate, 139 Pa. Superior Ct. 314, 318. Defendant, recognizing these principles, nevertheless now insists that the decree of the orphans' court is void upon its face, because void was open to collateral attack at any time, and hence was inadmissible in evidence. The fatal defect is alleged to be the lack of anything in the proceeding showing the alleged decedent to have any property in Pennsylvania.

Is the decree of the orphans' court void upon its face so as to be subject to collateral attack? A judgment may be void because the court had no power to render it with respect to the subject matter or because the court had not acquired lawful jurisdiction over the person of defendant: A. L. I. Restatement of Judgments, §4; Patterson's Estate, 341 Pa. 177. The judgment is not void and subject to collateral attack, however, unless the invalidity be apparent upon the face of the record: Wall v. Wall, 123 Pa. 545, 553; Mintz v. Mintz, 83 Pa. Superior Ct. 85; Brushvalley Twp. Poor Directors v. Allegheny County Poor Directors, 25 Pa. Superior Ct. 595.

Plaintiff's case therefore rests upon the contention that the orphans' court judgment is absolutely void because the lack of any property of the supposed decedent within the jurisdiction appears upon its face and this lack is fatal.

The existence of property within the jurisdiction is not a fundamental requisite to jurisdiction. This was the law under the Act of June 24, 1885, P. L. 155, which was our first act establishing the procedure for appointing a fiduciary for one presumptively dead: Maley, Executrix, v. Pennsylvania R. R. Co., 258 Pa. 73, 77.

Upon examination the right to invoke the Act of 1885, the Act of May 28, 1913, P. L. 369, the Fiduci-

aries Act of June 7, 1917, P. L. 447, sec. 6, the Act of April 27, 1927, P. L. 425, or the Act of August 5, 1941, P. L. 836, 20 PS §371, is found to arise whenever there is "a person supposed (or presumed) to be dead on account of absence for seven or more years" and a person who would have some interest in his estate or property if he be really dead. The Act of 1885 provided only for the certification to the orphans' court by the register of wills of an application for letters testamentary or of administration in the estate of one supposed to be dead; of course only one of the class entitled to ask for letters might initiate the proceedings. The Acts of 1913 and 1917 which provided for a proceeding to be instituted in the orphans' court described those who were entitled to petition as "any person entitled, under the last will and testament of such presumed decedent or under the intestate laws of any share in his or her estate within this Commonwealth, or the escheator for the Commonwealth . . ." The amendments of 1927 and 1941 described those entitled to institute proceedings by modifying this language to read:

". . . any person entitled, under the last will and testament of such presumed decedent or under the intestate laws to any share in his or her estate within this Commonwealth, or under any deed, will, or other instrument in writing, or in any other way, method, or manner, to any share or interest in any estate held by or for such presumed decedent, for years or for the term of his or her natural life, or the escheator for the Commonwealth . . ."

Does the added language of the amendments "or other instrument in writing" mean that the beneficiary named in a policy of life insurance upon the life of the presumed decedent has the right ipso facto to institute proceedings to declare the decedent presumptively dead? We apprehend not. The plain meaning of the amendment is that one who holds a remainder in real estate, a postponed interest in a trust, or a residual

interest in personal property after the interest of the absent one, may have the same right to institute proceedings as one who would share in any estate which might pass by will or the intestate law upon the death of the decedent. The amendment is not well phrased rhetorically and is poorly punctuated. If the comma after the words "to any share or interest in any estate held by or for such presumed decedent" be omitted, the meaning becomes more clear.

Verna B. Kimple's right to initiate the orphans' court proceedings arose not from her status as the beneficiary in an insurance policy but from her status as mother and heir of her son. The legislation above reviewed requires only a person supposedly dead and a proper person to take steps to have him declared presumptively dead. The acts, to be sure, assume the existence of property, doubtless because people will not ordinarily trouble themselves in such circumstances unless there is property; but the last definite condition imposed upon the court before directing advertisement is not if there be a show of property, but "if [the court is] satisfied as to the interest of the petitioner".

There is reason for this rule. The longer a man has been absent the more uncertain become his property rights. The law may properly be invoked and the presumption of death established in order to determine whether a man has property in the jurisdiction and if so what is happening to it. The primary purpose of the law is ". . . not to supply a procedure to determine whether the person is in fact alive or dead, but to set up a conservator for his property . . .": Wesner's Estate, 139 Pa. Superior Ct. 314, 317.

The present case demonstrates the wisdom of the rule stated in Maley, Executrix, v. Pennsylvania R. R. Co., 258 Pa. 73, 77:

"True there is nothing in the Act of 1885 to indicate a prerequisite to taking jurisdiction by the Orphans' Court is ownership of property by the supposed decedent within the State of Pennsylvania, or elsewhere."

Plaintiff may not have known whether the insurance policy was payable to her son's estate or to her. In either event some action was appropriate to make sure that his rights were protected. If the insured be actually dead his personal representative has no further interest in the policy; on the other hand, if he is still alive, he has full interest in the policy. The purpose of the act being conservation, there is no point in a narrow construction which would permit the act to be utilized only in clear cases, where there is perhaps least use for conservation.

Wesner's Estate, supra, relied upon by defendant, is not controlling. In that case an insurance company, after suit upon an insurance policy, sought to secure the vacation of an order decreeing the presumption of death of the insured and of the grant of letters of administration. The court held that under section 6(i) of the Fiduciaries Act the insurance company had no standing to apply for vacation of the order; it did not offer to show that the insured was alive; the time for appeal on the order had run out. But there is nothing in the opinion of the Superior Court holding that the order of the orphans' court was inadmissible in the suit on the policy. On this point Volmer v. John Hancock Mutual Life Ins. Co., 101 Pa. Superior Ct. 117, and Wiggins v. W. & S. Life Ins. Co., 114 Pa. Superior Ct. 198, are still the law.

Defendant's motion for a new trial is based chiefly upon the refusal of its third point, which reads as follows:

"That, if the jury finds for the plaintiff, the verdict should be conditioned upon the plaintiff's furnishing a bond sufficient to protect the defendant, in the event that William Ward Kimple appears and asserts his claim on the said policy.

"The jury is instructed that their verdict must be for the defendant."

This point was properly refused because it is really two points in one and they are mutually contradictory.

A point should contain a single proposition and be so constructed that the court can answer it by a simple affirmance or denial: Schweitzer v. Williams, 43 Pa. Superior Ct. 202.

Back of this defective point there is a difficult question of insurance law which merits examination. It may be stated thus: How may an insurance company protect itself from double payment in cases where death of the insured is presumed because of unexplained absence for more than seven years? Whether payment upon presumption of death is a complete defense to demand by the insured who has returned is, surprisingly enough, not clearly decided: Fuller v. New York Life Ins. Co., 199 Fed. 897 (C. C. A. 3). On principle such payment is no defense because under the principle of res adjudicata the insured is not barred from his rights, he not having been a party to the action: Siegfried v. Boyd et al., 237 Pa. 55, 59.

On the issue whether the insurer who has paid the amount due on a policy can recover from the beneficiary when the presumed decedent is found to be alive there is also some uncertainty. Some authorities hold that payment in such cases involves a species of mistake of fact: Masonic Life Assn. v. Crandall (1896), 9 App. Div. 400, 41 N. Y. Supp. 497; North British & Mercantile Insurance Co., 9 Scotch Sessions Cases (3rd series), 534. If, however, there has been not full payment but a compromise, no money may be recovered: Sears v. Grand Lodge, etc., 163 N. Y. 374, 57 N. E. 618, 50 L. R. A. 204; New York Life Ins. Co. v. Chittenden & Eastman et al., 134 Iowa 613, 112 N. W. 96. From the practical standpoint of the insurance company the whole problem is a difficult one.

But what about the beneficiary of the policy—in the present case, the mother of the insured? Perhaps her son was lost at sea, killed in an explosion, or became the victim of foul play. His body may never be found. How long must she wait to receive the insurance on his life?

Defendant's answer has been to refuse payment unless plaintiff gives a refunding bond with surety "sufficient to protect the defendant in the event that William Ward Kimple appears and asserts his claim on the said policy". But the cost of the bond might in time consume the value of the insurance and the furnishing of the bond, even with private surety, is always a burdensome thing. There are burdens and difficulties confronting insurer or beneficiary however the case be decided.

Defendant argues with some force that, since the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 6 (*h*), 20 PS §378, requires the giving of a refunding bond as a prerequisite to the receipt by the heirs, legatees, or devisees of a presumed decedent of any share of his estate, this should be accepted as the settled public policy of the State. The cases are, however, not quite analogous. It is the State which permits or controls the passage of property upon death of the owner and the State may impose conditions. Life insurance on the contrary is a pure matter of contract. Inheritance laws are not involved unless the policy is payable to the estate. It should be noted also that the Fiduciaries Act does not require a refunding bond from a creditor.

In any event it has been held that, notwithstanding the Act of June 24, 1885, P. L. 155, relating to the grant of letters upon estates of persons presumed to be deceased, the common-law rules upon the point are still applicable to cases arising in the common pleas involving the presumption of death: Groner v. Supreme Tent of the Knights of Maccabees of the World, 265 Pa. 129. This indeed is the answer to our question. The law as it stood when this policy was written and as it now stands allows recovery without the giving of a refunding bond: II Appleman's Insurance Law & Practice 712; Roblin v. Supreme Tent of the Knights of Maccabees of the World, 269 Pa. 139, 142; McNulty v. General American Life Ins. Co., 153 Pa. Superior Ct.

288. No specific Pennsylvania case on the subject has been found; but the payment of so many claims without the raising of the point is evidence of an understanding of the law by insurance men.

The only case cited by counsel for defendant in which the right to require a refunding bond was considered—and our researches have discovered no other—is Steele v. Metropolitan Life Ins. Co., 196 N. C. 408, 145 S. E. 787, 61 A. L. R. 821. There, in a well-considered opinion, the right to demand a refunding bond was rejected, the court pointing out that the insurance company was bound, when it issued the policy, to know it might be called upon to pay upon the proof of a presumptive death.

Defendant prepared the policy. There is nothing therein contained requiring the giving of a refunding bond. The policy must operate most strongly against the one who prepares it. Roblin v. Supreme Tent of the Knights of the Maccabees of the World, 269 Pa. 139, Gurnacki v. Polish Roman Catholic Union of America, Inc., 113 Pa. Superior Ct. 189, and Coffey v. The Maccabees, 292 Pa. 58, illustrate how an insurance society of the fraternal type may protect itself. Since defendant has not included any provisions in the policy in suit requiring the giving of a refunding bond, the provisions of the general law apply and no bond may be required.

In view of this fundamental conclusion it is unnecessary to discuss the right of a court to take a conditional verdict, or to impose conditions upon the granting of a new trial or upon the entry of judgment.

Entertaining these views we make the following

### Order

Now, June 22, 1944, defendant's motions for judgment non obstante veredicto and for a new trial are each severally overruled and refused and the prothonotary is directed to enter judgment on the verdict upon the payment of the jury fee.