## Sheak *v.* New York Life Insurance Company, Appellant.

Argued March 5, 1945.   Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH and ROSS, JJ.

*William J. Fitzgerald*, with him *Edward J. Kelly*, for appellant.

*Leon M. Levy*, with him *Everett A. Rosser* and *John W. Bour*, for appellee.

OPINION BY BALDRIGE, P. J., April 23, 1945:

The plaintiff, the former wife of Robert Sheak, the insured, obtained a judgment in the court below in a suit brought on a life insurance policy. She, as beneficiary in the policy, had to rely upon a presumption of death, which arises when a person is absent and unheard of for seven years.

The appellant contends that its motion for judgment n. o. v. should have been granted (1) as the insured was heard from within seven years from the date of his disappearance; and (2) his continuous absence is explained by the fact that he had deserted his wife. The facts are not in dispute.

The policy, issued by the defendant company in 1924, lapsed for non-payment of premium on October 27, 1933. By its terms it thereupon was converted into extended insurance, which provided for payment of $1,000 in the event the insured died on or before September 3, 1942. The plaintiff's evidence established that she last saw the insured about September 1, 1934, when he left their home in Scranton to obtain employment in Binghamton, New York, where he stayed for a short time at his sister's home. The plaintiff first tried to contact him by phone and then went there and made inquiries in an effort to locate him, but she could obtain no information concerning his whereabouts.

The insured's mother testified that she last saw her son when he visited her in Scranton on Easter Sunday of 1935. On cross-examination she stated, without any objection, that she received a telephone call in Scranton. She was uncertain as to the date, as shown by her tesimony: "Q. Well, it was in the fall sometime? A. Yes,

it was early fall, I think. I can't just remember the date. I never took any account of it." The operator told her that a man, who gave his name as Robert Sheak, was calling from California and asked if she would accept the call and the charge. This, after consulting with her husband, she refused to do. The witness subsequently attempted to trace the call to a city in California (the name of which she could not remember at the trial) from where it was reputed to have come, but received no response, nor could she obtain any information concerning her son.

It thus appears that there were unsuccessful searches and inquiries made by the insured's wife and his mother in an effort to ascertain his whereabouts. On March 26, 1941, the company was notified by counsel for the plaintiff of the continued absence of the insured and she requested it to investigate and try to locate him.

Defendant called no witnesses but offered in evidence a record of a divorce proceeding instituted in Lackawanna County wherein this plaintiff in July of 1940 obtained a decree on the ground of her husband's desertion. The only testimony relied upon by the appellant under its first point was the telephone call. It had very little, if any, probative value. Furthermore, the appellant is in no position to complain as this hearsay testimony was admitted and the jury was specifically instructed that if the call came from the insured and occurred on or after September 3, 1935, the plaintiff could not recover. More favorable instructions could not have been requested by the defendant.

That brings us to appellant's second point, that the insured's absence was explained in that he left his wife and she secured a divorce from him on the ground of desertion. The evidence of the divorce action was introduced in an attempt to refute and negative the presumption of death. The theory was advanced that the insured had a motive, although none was shown, for

leaving his home and staying away and keeping his whereabouts unknown. It was argued also that the institution of a divorce proceeding by the plaintiff indicated that she did not believe her husband was dead, otherwise such proceeding was unnecessary.

There is no evidence that when the insured left home there was any pending action against him, either civil or criminal, or that one was threatened, nor were there any other substantial reason shown for his going away and concealing his whereabouts. The divorce proceeding did not explain his disappearance or continued absence, as it was not instituted until five years after he left his wife. In *Wiggins v. W. & S. Life Ins. Co.,* 114 Pa. Superior Ct. 198, 173 A. 751, the insured, 22 months before his disappearance, was arrested and gave bail for his appearance in court for non support. It appeared there that no subsequent action had been taken up to the time he disappeared. We affirmed the judgment obtained by the plaintiff.

Recently, in *McNulty v. General American Life Ins. Co.,* 153 Pa. Superior Ct. 288, 291, 292, 33 A. 2d 796, we reiterated the general rule that when one's absence is unexplained and he is unheard of for seven years, there arises a presumption of death, and unless overcome the amount due under a life insurance policy is due and payable. Any fact which fairly and reasonably tends to rebut the presumption is admissible. "The presumption of death naturally depends upon the circumstances in each case. The sufficiency of the evidence to rebut the presumption, once it is shown to exist, is a question of law: Wigmore, Evidence, Third Edition, Vol. IX, Sec. 2531b, p. 473. The truth, however, of plaintiff's evidence, upon which the presumption of death is predicated, and every inference fairly deducible therefrom must be assumed by the court in determining that question: Gurnacki v. Polish Roman Catholic Union, 113 Pa. Superior Ct. 189, 192, 172 A. 480."

If we assume this case was for the jury's considera-
tion, there was ample evidence for it to find that the
insured had been absent and unheard of for a period
of seven years, prior to September 3, 1942, and that
there were no circumstances reasonably explaining his
remaining away.

The cases of *Volmer v. John Hancock M. Life Ins. Co.,*
101 Pa. Superior Ct. 117, and *Grunda v. First Lithu-
anian B. & L. Assn.,* 128 Pa. Superior Ct. 604, 194 A.
747, relied upon by appellant, are distinguishable. In
the *Volmer* case it appeared the insured had misappro-
priated funds just before his disappearance. In the
*Grunda* case there was no reasonable effort made by
the husband to locate his wife after she disappeared
and there were other circumstances in that case that
differentiate it from the one at bar.

We find nothing in this record that warrants our
disturbing the verdict of the jury. The judgment is
affirmed.